# ORIGINAL

# In the United States Court of Federal Claims

No. 15-174C
Filed: October 23, 2015

|  |  |  |
|---|---|---|
| ANDREI KARANJA LAGERGREN, | ) ) ) | **FILED** |
|  | ) ) | OCT 2 3 2015 |
| Plaintiff, | ) ) | U.S. COURT OF |
|  | ) | FEDERAL CLAIMS |
| v. | ) |  |
|  | ) |  |
| THE UNITED STATES, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## ORDER

### GRANTING DEFENDANT'S MOTION TO DISMISS

Plaintiff is a pro se litigant proceeding here *in forma pauperis*. Plaintiff seeks to recover seaman's double wages, authorized under the provisions of 46 U.S.C. § 10504(b), (c)(1) (2012), that he claims he is entitled to due to a delay in payment for unused leave that was owed to him upon the termination of his employment as a merchant seaman with the National Oceanic and Atmospheric Administration ("NOAA"). This case is now before the court on defendant's motion to dismiss the complaint for lack of jurisdiction. The court grants defendant's motion.

## FACTS

Plaintiff was employed as the third assistant engineer assigned to the NOAA ship *Rainier* from March 17, 2013, until his termination on June 6, 2013. After his termination, plaintiff received two payments from the government, $821.96 on November 12, 2013, and $3,120.63 on November 25, 2013, for his annual leave

1

and compensatory leave, respectively. Although plaintiff acknowledges that these amounts correctly reflect his pay entitlement based on his employment record, he maintains that these funds should have been paid at the latest within two days after his separation, not the 171 days that actually transpired.

According to documents attached to the complaint, the delay in payment was attributable to NOAA's Marine Operations Center hiring coordinator being out of the office on medical leave in the summer of 2013 and then furloughed for a period thereafter. As alleged, plaintiff's separation package was forwarded to the NOAA Workforce Management Office for processing on October 30, 2013, and all remaining compensation due him was paid approximately three weeks later.

Plaintiff initially filed an administrative claim seeking penalties for the delay in payment under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680 (2012). That claim, however, was dismissed for lack of jurisdiction. Thereafter, plaintiff filed the present suit seeking penalties against the United States under § 10504(b), (c)(1), specifically, two days' wages for each day payment was delayed, resulting in a claim of $52,322.55 for the 171-day delay that transpired between his termination and his receipt of compensation.

## DISCUSSION

In litigating this claim, plaintiff relies on 46 U.S.C. § 10504(b), (c)(1), which reads in relevant part, as follows[1]:

   (b)   The master shall pay a seaman the balance of wages due the seaman within 2 days after the termination of the agreement required by section 10502 of this title [46 U.S.C. § 10502] or when the seaman is discharged, whichever is earlier.

---

[1] Although plaintiff characterizes his claim as an admiralty claim arising under the Suits in Admiralty Act, 46 U.S.C. §§ 30901-30918, this characterization is not correct. In United States v. United Continental Tuna Corp., 425 U.S. 164 (1976), the Supreme Court referred to its earlier decision in Amell v. United States, 384 U.S. 158 (1966), saying that "we held [in Amell] that wage claims exceeding $10,000 by Government employees working aboard Government vessels are . . . cognizable exclusively in the Court of Claims [this court's statutory predecessor] where wage claims by Government employees have traditionally been cognizable." See United Cont'l Tuna Corp., 425 U.S. at 179 n.18. Properly understood, then, plaintiff's suit against the government is litigable here under the Tucker Act, 28 U.S.C. § 1491 (2012), (the court's basic jurisdictional statute) and not the Suits in Admiralty Act.

(c)(1)  Subject to subsection (d), and except as provided in paragraph (2), when payment is not made as provided under subsection (b) of this section without sufficient cause, the master or owner shall pay to the seaman 2 days' wages for each day payment is delayed.

Plaintiff, as we have noted, asserts a 171-delay in the payment of wages resulting in a total claim (after doubling of his daily wage rate) of $52,332.55.[2]  Defendant has moved for dismissal of the claim on the ground that it seeks payment of a penalty rather than compensation and, as such, is not recoverable against the United States on grounds of sovereign immunity, i.e., that Congress has not given its consent to the allowance of such claims against the government.

In support of this contention, defendant relies on a number of cases, chief among them Missouri Pacific R.R. v. Ault, 256 U.S. 554 (1921).  In Ault, the government, proceeding under emergency legislation enacted in furtherance of the war effort, had taken over operation and control of a railroad pursuant to statutory provisions which (1) maintained the railroad's amenability to suit during the period of government control, but shielded it from any resulting liability; (2) waived the government's traditional defense of sovereign immunity; and (3) preserved the enforceability of state regulatory authority.[3]  Against this statutory background wherein, as the Court described it, "the usual immunity of the sovereign from legal liability was not to prevent the enforcement of liabilities ordinarily incident to the operation of carriers," id. at 559, the question arose whether the government, as the operator of the railroad, could be held liable for a default judgment, entered in favor of the railroad's discharged employee, that added a state-law penalty to the employee's claim for late payment of wages.[4]  The government did not contest

---

[2] According to plaintiff, his daily rate of pay (based on an annual salary of $55,852) was $153—an amount which, when doubled in accordance with the statute, results in a daily rate of $306 and a total claim of $52,332.55 for the 171-day delay in the payment of wages.

[3] Specifically, these provisions read as follows:  (i) "carriers while under federal control shall be subject to all laws and liabilities as common carrier . . . and in any action at law or suit in equity against the carrier no defense shall be made thereto upon the ground that the carrier is an instrumentality or agency of the federal government," and (ii) "[t]hat nothing in this Act shall be construed to amend, repeal, impair, or affect the existing laws or powers or States in relation to . . . the lawful police regulations of the several States."  Fed. Control Act, Pub. L. No. 65-107, 40 Stat. 451, 456, 458 (1918).

[4] The default judgment provided that the employee (Ault) was to recover the sum of $50 in wages owed and $390 as penalty.

3

liability for the wages owed, but resisted payment of the penalty amount. On appeal, the judgment was affirmed.

The Supreme Court reversed. The Court held that the plaintiff could recover the wages due him, but not the penalty amount. Speaking through Justice Brandeis, the Court explained that pursuant to the statute under which the government was operating, the government "submitted itself to the various laws, state and federal, which prescribed how the duty of a common carrier by railroad should be performed and what should be the remedy for failure to perform. . . . But there is nothing either in the purpose or the letter of [the statute] to indicate that Congress intended to authorize suit against the government for a penalty, if it should fail to perform the legal obligations imposed." Id. at 563.

The Court went on to say that "[t]he purpose for which the government permitted itself to be sued was compensation, not punishment," id. at 564, and that "the element of punishment clearly predominates [here] and Congress has not given its consent that suits of this character be brought against the United States," id. at 565.

Defendant contends that the decision in Ault is directly applicable to the present case for there, as here, the claim asserted against the government included a demand for payment of a wage-related sum—an amount added on account of the late payment of an employee's wage—that was punitive, rather than compensatory, in character. According to defendant, Ault holds that absent specific consent, a waiver of sovereign immunity does not extend to the recovery of punitive damages from the government.

In further support of its argument, defendant refers to McCrea v. United States (The American Shipper), 70 F.2d 632 (2d Cir. 1934), where the court—relying on Ault—rejected a seaman's claim against the United States for double pay under the Seaman's Act of 1915, 46 U.S.C. § 10313(f) and (g)(i), holding that the "dominant purpose" of that statute was to punish an employer for failure to make a timely payment and, hence, was a claim with respect to which the United States had not waived its sovereign immunity. Id. at 635. The same view was expressed in Abogdo v. Int'l Marine Carriers, 890 F. Supp. 626, 631-32 (S.D. Tex. 1995) ("Because it is clear the [Suits in Admiralty Act] nowhere contains authorization for such [punitive damages] by a seaman, punitive damages cannot be sought from the government under the [Suits in Admiralty Act] or the [Public Vessels Act]." Finally, in Griffin v. Oceanic Contractors, Inc., 458 U.S. 564 (1982), the Supreme Court noted prior case law describing the purpose of § 10504 as "not exclusively compensatory," and then stated in dicta that "although the sure purpose of the statute is remedial, Congress has chosen to secure that purpose through the use of potentially punitive sanctions designed to deter negligent or arbitrary delays in payment." Id. at 572.

4

Plaintiff endeavors to overcome the force of these authorities by contending that § 10504(b), (c)(1) grants him a property right in the wages being claimed and, as such, constitutes an enforceable right to the payment of money pursuant to the Takings Clause of the Fifth Amendment of the United States Constitution. This argument, however, begs the question. The issue here is not whether the failure to pay plaintiff constitutes a taking of his property. Rather, the issue is whether plaintiff has such a property right in the first instance. And the answer is no.

This same issue was addressed in <u>Adams v. United States</u>, 391 F.3d 1212 (Fed. Cir. 2004). There the question was whether federal law enforcement employees could invoke the Takings Clause of the Fifth Amendment as a basis for their claim of entitlement to unpaid overtime compensation. The court rejected this contention, saying that "a statutory right to be paid money, at least in the context of federal employee compensation and benefit entitlement statutes, is not a property interest for purposes of the Takings Clause. . . . [W]e view it as nothing more than an allegation that money is owed." <u>Id.</u> at 1225. Plaintiff's case can fare no better; it, too, is nothing more than a claim that money is owed. Accordingly, based on the several authorities cited above, plaintiff's claim must be rejected.

## CONCLUSION

Plaintiff, having been earlier paid the wage amounts to which he was statutorily entitled, is entitled to no more. The amount he has sought in this litigation—twice his daily wage rate for each day payment of wages was delayed—is recognized in the case law as a punitive sanction and, as such, is not recoverable against the United States because Congress has not consented to suit on such demands. Accordingly, the court is without power to grant relief and plaintiff's claim must be dismissed for lack of jurisdiction. The Clerk shall enter judgment accordingly.

IT IS SO ORDERED.

John P. Wiese
Senior Judge

5